UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS ATIYEH,<br><br>Plaintiff,<br><br>v.<br><br>AL SCHMIDT,<br><br>Defendant. | No. 26-cv-02813<br>Judge Keli M. Neary |

**BRIEF OF THE SECRETARY OF THE COMMONWEALTH AL SCHMIDT IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


Introduction ..........1

Background ..........2

Argument ..........8

I. Plaintiff waited too long to file. ..........9

II. The Court cannot grant any meaningful relief this close to Election Day. ..........12

A. Counties have already taken irreversible steps to prepare for the election. ..........12

B. Even if he somehow was successful, Plaintiff could not be certified as a candidate until the brink of Election Day. ..........16

III. The Signature Requirements for Third Party Candidates Are Constitutional. ..........17

Conclusion ..........22

# TABLE OF AUTHORITIES

## Cases

*Am. Party of Texas v. White*, 415 U.S. 767 (1974)....18

*Bognet v. Secretary*, 980 F.3d 336 (3d Cir. 2020)....9

*Constitution Party of Pennsylvania v. Aichele*, 116 F. Supp. 3d 486 (E.D. Pa. 2015)....3

*Constitution Party of Pennsylvania*, No. 12-2726 (E.D. Pa. Feb. 1, 2018)....3

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016)....9

*De La Fuente v. Cortes*, 751 F. App'x 269 (3d Cir. 2018)....20

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)....9

*Democratic Nat'l Comm. v. Wisc. State Leg.*, 592 U.S. 1039 (2020)....11

*Elad v. Nat'l Collegiate Athletic Ass'n*, 160 F.4th 407 (3d Cir. 2025)....8

*In re Nomination Papers of Andrew Tupone*, ---A.3d---, No. 58 MAP 2026, 2026 WL 2794472 (Pa. Sept. 18, 2026)....16

*In re Nomination Papers of Tony Dastra and Craig Bolton*, No. 365 M.D. 2026, 2026 WL 2650980 (Pa. Cmwlth. Aug. 21, 2026).... 17, 22

*In re Zulick*, 832 A.2d 572 (Pa. Cmwlth. 2003)....18

*Indep. Party of Florida v. Sec'y, State of Florida*, 967 F.3d 1277 (11th Cir. 2020)....18

*Jenness v. Fortson*, 403 U.S. 431 (1971)....18

*Johnson & Johnson v. Samsung Bioepis Co. Ltd.*, 173 F.4th 454 (3d Cir. 2026)....8

*Libertarian Party of Pennsylvania v. Davis*, No. 84-0262 (M.D. Pa. June 13, 1984)....4

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ....................................18

*Merrill v. Milligan*, 142 S.Ct. 879 (2022).....................................................8, 12

*Pa. Democratic Party v. Republican Party of Pa.*, No. 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ..................................................9

*People not Politicians v. Onder*, 609 U.S. ---, 2026 WL 2883222 (Sept. 25, 2026)..........................................................................12

*Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980)..................................................8

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ..............................................................8

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020) ..........................................................................................9

*Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396 (E.D. Pa. 2016) ..........................................................................................9, 10

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ...................................... 18, 19, 20

*Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ..........................................9

*Storer v. Brown*, 415 U.S. 724 (1974) ...............................................................20

*Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013) ..................8

*Williams v. Pa. Dep't of State*, 325 A.3d 1041 (Pa. Cmwlth. 2024) .....................11

*Williams v. Pa. Dep't of State*, 326 A.3d 393 (Pa. 2024).....................................11

**Statutes**

25 P.S. § 2867 ........................................................................................3

25 P.S. § 2870 ........................................................................................3

25 P.S. § 2872.1 .....................................................................................3

25 P.S. § 2882 ........................................................................................3

25 P.S. § 2913 ....................................................................................4, 21

25 P.S. § 2914 ........................................................................................3

25 P.S. § 2936 .......... 5, 21

25 P.S. § 2937 .......... 3, 5, 11

25 P.S. § 2941 .......... 11, 12, 13

25 P.S. § 2944 .......... 11, 12

25 P.S. § 3031.10 .......... 14

25 P.S. § 3031.5 .......... 14

25 P.S. § 2911 .......... 3, 19

42 Pa.C.S. § 723 .......... 16

52 U.S.C. § 20302 .......... 6

**Other Authorities**

Directive 1 of 2025, *Directive on Logic & Accuracy Testing*, Version 3.1 (Apr. 7, 2025) .......... 15

**Rules**

Fed. R. Civ. P. 65 .......... 8

**Constitutional Provisions**

Pa. Const. Art. IV, § 4 .......... 17

## INTRODUCTION

Plaintiff Dennis Atiyeh has filed this action in an attempt to put himself on the ballot as an independent candidate for Governor for Pennsylvania in the November 2026 General Election, which is just weeks away. Yet he admits that he never filed nomination papers, which are required to seek office. Plaintiff's eleventh-hour attempt to obtain injunctive relief from this Court to excuse him from Pennsylvania's reasonable requirements to obtain ballot access should be denied.

First, Plaintiff is too late, and the request for an injunction should be denied on this basis alone. Plaintiff inexplicably waited 49 days from August 3 (the date he alleges the Department of State refused to provide him with an extension) to September 21, 2026, to file this action. The 2026 General Election is already underway, with hundreds of thousands of mail ballots having gone out to voters. Approximately 891,700 mail ballots are currently in the mail stream to the more than 1 million people whose applications to vote by mail have been approved thus far, and approximately 44,500 ballots have already been returned. Counties are also using the finalized ballots to conduct time-intensive testing of their election equipment to be used on Election Day on November 3. All counties have already noticed this testing and many have completed it or will complete it in the next two weeks. Attempting to undo these steps now would pose impossible election administration burdens.

And even if Plaintiff had a meritorious claim—which he does not— no meaningful relief is available. He requests an Order to "require Secretary to evaluate nomination papers and signatures under the constitutional standards determined by this Court." Mot. for Prelim. Inj. at Section 10. This would not put Plaintiff on the ballot. It would only begin the objections period required by the Pennsylvania Election Code and applicable to every other candidate. Even a substantially abridged objections process would be impossible to complete at this point.

Finally, Plaintiff's claims fail on the merits. Requiring Plaintiff to meet the same signature requirements as any other non-major political party candidate for governor, as Pennsylvania law mandates, does not impose an unconstitutional burden. Such requirements have consistently been upheld by courts and are necessary to maintain the integrity of the electoral process by ensuring viable candidates and avoiding ballot clutter.

For these reasons, the request for a preliminary injunction should be denied.

## BACKGROUND

In Pennsylvania, all non-major party candidates[1] including minor political party, political body, and independent candidates (collectively Third Party

[1] Republican and Democratic candidates have a different process whereby they file nomination petitions, circulated for a three-week period from the thirteenth Tuesday to the tenth Tuesday before the primary, to obtain a place on the Primary Election ballot for each of their respective parties. The winners of the

Candidates) are nominated through the filing of nomination papers with the Department of State. 25 P.S. §§ 2911-2914. While the Election Code requires such candidates for state-wide offices such as Governor to obtain signatures of qualified electors in an amount equal to at least two percent of the largest entire vote cast for any elected candidate in the state at large in the last preceding election, 25 P.S. § 2911(b), that signature requirement has been modified in practice by litigation in *Constitution Party of Pennsylvania v. Aichele*, 116 F. Supp. 3d 486, 503-04 (E.D. Pa. 2015). There, the Court found in an as-applied challenge that the combination of the signature requirement of Section 2911(b) and the potential costs at issue in defending a challenge under Section 2937 could potentially create an impermissible burden for the political bodies who brought that case.

As a result of an Order issued in 2018 resolving that case, statewide candidates for those plaintiff political bodies have since been subject to lesser signature requirements than those contained in Section 2911(b). Specifically, candidates for the office of Governor for those plaintiff political bodies must obtain 5,000 signatures. *See Order*, *Constitution Party of Pennsylvania*, No. 12-2726 (E.D. Pa. Feb. 1, 2018), attached as Exhibit A. While the Order only applied to the named political bodies in the *Constitution Party* case, the Department applies those requirements to all

party primaries become candidates for the General Election. 25 P.S. §§ 2867-2870; 2872.1; 2882.

political bodies and independent candidates so as to treat all those similarly situated equally.

Similarly, pursuant to a Consent Decree in *Libertarian Party of Pennsylvania v. Davis*, No. 84-0262 (M.D. Pa. June 13, 1984), attached as Exhibit B (Consent Decree), the deadline by which nomination papers must be filed under Section 2913(b) has been extended from the second Friday after the primary until August 1. So for 2026, all Third Party Candidates had from March 11 to August 3[2] to complete and submit to the Department the required nomination paperwork to secure access to the General Election ballot, which includes nomination papers with the requisite amount of signatures, an affidavit, a filing fee, and a copy of the Statement of Financial Interests submitted to the State Ethics Commission.

The Department placed all materials for Third Party Candidates on its website at 5:48 p.m. on March 10, 2026, which was the day prior to the time nomination papers can be circulated. *See* Declaration of Jonathan Marks, attached as Exhibit C at ¶ 12; Screenshot of Department's website management software, attached as Exhibit D. The Department waits to do this until after the deadline for nomination petition filing for major party candidates concludes each year because Third Party Candidates cannot circulate nomination papers prior to that time and so as to avoid any

[2] August 1 this year was a Saturday. *See* 25 P.S. § 2603(e) (moving deadlines to the next ordinary business day).

confusion for candidates. *See* Marks Decl. ¶ 12. The materials include links to all of the required forms, including the Nomination pages themselves, the affidavit, statement of financial interests, instructions and signature requirements.[3] The instructions clearly lay out the requirements for candidates, including the requirement to use different sheets for signers residing in different counties. This statutory requirement is particularly necessary for expeditious review of signatures by both the Department during its initial review pursuant to Section 2936 of the Election Code and for the review of courts during objections proceedings under Section 2937. *See* Marks Decl. ¶ 13.

Plaintiff claims unspecified delays in his obtaining access to nomination paper materials. Mot. for Prelim. Inj. at ¶¶ 4-9. Yet the Department's documents and contemporaneous communications with other Third Party Candidates show that the materials were available on the Department's website on March 10, 2026, one day before the circulation period began. *See* Marks Decl. ¶¶ 12-14; *see also* Emails with independent candidates (March 11 & 12, 2026), attached as Exhibits E and F. On May 26, 2026, Allora Atiyeh (presumably a relative of Plaintiff) emailed the Department to ask about the number of signatures needed, to which the Department replied the same day. *See* Atiyeh email exchange (May 26, 2026), attached as Exhibit G. On

[3] Available at: https://www.pa.gov/agencies/dos/programs/voting-and-elections/running-for-office/third-party-nomination-paperwork.

June 4, 2026, Allora Atiyeh sent an email to the Department with additional questions which, again, was answered that day. *See* Atiyeh email exchange (June 4, 2026), attached as Exhibit H.

Plaintiff contacted the Department on August 3, 2026, the day of the deadline, to request an extension to file his nomination papers, which the Department denied. Mot. for Prelim. Inj. at 22-26; Atiyeh letter (Aug. 3, 2026), attached as Exhibit I. Plaintiff then subsequently emailed the Department on August 7 threatening to file an action in Commonwealth Court. Atiyeh email (Aug. 7, 2026), attached as Exhibit J. Plaintiff never did so.

On September 4, 2026, the Secretary certified the official candidate list for the General Election. Marks Decl. ¶ 16; *see also* Secretary's Certified List, attached as Exhibit K. Following certification of candidates, counties began finalizing their ballots and complying with their statutory requirements for election preparation.

Counties have already sent absentee ballots to military and overseas civilians pursuant to the Uniformed and Overseas Citizens Absentee Voting Act. *See* 52 U.S.C. § 20302(a)(8)(A) (requiring ballots to be transmitted to absent uniformed services and overseas voters no later than 45 days prior to an election, which was September 19 this year). And counties have started sending mail ballots to all other voters as well. By Wednesday, September 30, 35 counties will have begun sending out mail ballots. Marks Decl. ¶ 6. Approximately 891,700 ballots have already been

sent to the more than 1 million individuals who applied to vote in 2026 general election by mail. *See* Marks Decl. ¶¶ 4-6. Approximately 44,500 of those ballots already have been returned. *Id.* ¶ 7. These numbers will only steadily increase in the days and weeks to come.

Further, counties have already begun the intensive process of logic and accuracy testing necessary to ensure that their respective voting systems are ready for Election Day. Several counties have already completed that testing, including many of Pennsylvania's most populous counties – Philadelphia, Allegheny, Montgomery, Erie, Lebanon, and Chester. Marks Decl. ¶ 10. Other counties are scheduled to complete testing in the first two weeks of October. *Id.*

On September 21, 2026—after waiting 49 days from the Secretary's allegedly wrongful act of enforcing a mandated deadline that is required for all Third Party Candidates, and just 43 days before Election Day—Plaintiff commenced this action for emergency relief, claiming that the "combined effect of the delayed availability of nomination papers, the signature requirement, the county-separation requirement, and the refusal to provide additional circulation time prevented him from obtaining a meaningful opportunity to satisfy Pennsylvania's ballot-access requirements." Mot. for Prelim. Inj. at 29. Plaintiff seeks an Order requiring the Secretary to evaluate Plaintiff's nomination papers, which he has never submitted to the Department,

"under the constitutional standards determined by this Court." Mot. for Prelim. Inj. at X(C). Plaintiff's request for injunctive relief must be denied.

**ARGUMENT**

The standard for obtaining a preliminary injunction under Fed. R. Civ. P. 65 is well recognized. *See, e.g.*, *Johnson & Johnson v. Samsung Bioepis Co. Ltd.*, 173 F.4th 454, 460 (3d Cir. 2026); *Elad v. Nat'l Collegiate Athletic Ass'n*, 160 F.4th 407, 412 (3d Cir. 2025). But the "burden on the moving party is particularly heavy" where, as here, they seek mandatory relief rather than merely to preserve the status quo. *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) ("[A] mandatory injunction is an 'extraordinary remedy to be employed only in the most unusual case,'" and "the moving party's 'right to relief must be indisputably clear'").

There are even more stringent considerations that apply in the period close to an election. As the United States Supreme Court has repeatedly warned, federal courts should not enjoin a state's election laws in the period close to an election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam); *Merrill v. Milligan*, 142 S.Ct. 879, 880 (2022) (Kavanaugh concurrence) (collecting cases). Essentially, when an election is close at hand, as is the case here, the rules must be clear and settled.

## I. Plaintiff waited too long to file.

Plaintiff's timing is reason alone to deny his motion. Grants of federal injunctive relief must comport with principles of equity. *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 199 (3d Cir. 2024). Requests for injunctive relief, therefore, may be denied solely because they were filed too late. *See Stein v. Cortés*, 223 F. Supp. 3d 423, 437 (E.D. Pa. 2016).

As recognized above, this principle is particularly applicable when a late-filed request for injunctive relief would substantially and detrimentally change election administration. In such instances, courts have repeatedly denied requests for injunctive relief on this basis alone. *See, e.g.*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("[L]ower federal courts should ordinarily not alter the election rules on the eve of an election."); *Bognet v. Secretary*, 980 F.3d 336, 363 (3d Cir. 2020), *vacated as moot* (affirming district court's denial of request for preliminary injunction based solely on timing of plaintiffs' request); *Stein*, 223 F. Supp. 3d at 437 (denying request for a recount based on facts known to plaintiffs long before they filed); *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) (denying request to enjoin restrictions on qualified poll watchers filed just weeks before Election Day); *Pa. Democratic Party v. Republican Party of Pa.*, No. 16-5664, 2016 WL 6582659, at *5 (E.D. Pa. Nov. 7, 2016) (denying request

for injunctive relief because it was sought just before Election Day), attached as Exhibit L.

Whether called "laches, the *Purcell* principle, or common sense," this bar against late and onerous election changes protects the orderly operation of elections. *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). These principles apply with full force here given the timing of Plaintiff's action. Notably, nothing about Plaintiff's proposed "judicial fire drill" was necessary. *Republican Party of Pa.*, 218 F. Supp. 3d at 405.

Even taking Plaintiff's claim that he somehow did not have access to nomination materials until late March 2026, *see* Mot. for Prelim. Inj. ¶ 9, a claim belied by the Department's contemporaneous documentary evidence, as of that time he was aware of what he needed to do by the August 3 deadline. Still, he took no action at this time to claim that these requirements were unconstitutionally burdensome.

On August 3, Plaintiff admits he contacted the Department and was told that he would not be granted an extension to file his nomination papers. Mot. for Prelim. Inj. ¶¶ 22-24. Still, Plaintiff took no action.

On August 7, Plaintiff sent an email to the Department stating he would file an action in Commonwealth Court, *see* Exhibit J. Plaintiff never did so. Instead, Plaintiff inexplicably waited until after candidates were certified, after ballots were finalized, after 2026 General Election preparation was already underway, to claim

that the rules should be re-written so that he can be on the ballot for a state-wide office.

Plaintiff has not pursued his interests with required diligence. The Pennsylvania Election Code provides a very stringent timeline to institute ballot challenges. For instance, objections to nomination papers the Department has accepted must be filed within seven days, *see* 25 P.S. § 2937, and mandamus challenges that are not filed promptly have been deemed waived under the doctrine of laches. *Williams v. Pa. Dep't of State*, 325 A.3d 1041 (Pa. Cmwlth.), *aff'd*, 326 A.3d 393 (Pa. 2024). This is all for good reason. The Secretary needs to certify the list of candidates to appear on the General Election ballot so that counties can finalize those ballots. *See* 25 P.S. § 2944 (requiring certification); 25 P.S. § 2941 (providing for a 75-day pre-election deadline).

Yet Plaintiff now asks this Court for the relief he knew he could have sought from a Pennsylvania state court weeks ago. Granting Plaintiff's requested relief at this juncture would exceed a federal court's proper role. *See Democratic Nat'l Comm. v. Wisc. State Leg.*, 592 U.S. 1039, 1044 (2020) (Kavanaugh, J., concurring). Plaintiff's failure to act with necessary diligence dooms his claim. His request for injunctive relief should be denied on that basis alone.

## II. The Court cannot grant any meaningful relief this close to Election Day.

Administration of the 2026 election is already underway. And the only conceivable relief available to Plaintiff would not place his name on the ballot. Instead, it would simply begin the state-law objection period applicable to all political body nominations. By the time that process concludes, preparations for Election Day will be largely at an end. The unavailability of relief is yet another reason to deny the request for an injunction.

### A. Counties have already taken irreversible steps to prepare for the election.

Under Pennsylvania law, the Secretary must certify and transmit to county boards of elections the list of candidates that have been properly nominated for a general election. 25 P.S. § 2944. He must do so "as soon as possible" after the last day for filing substituted nomination certificates. For the 2026 General Election, the last day to substitute nominations was August 20, 2026. *Id.* § 2941 (providing for a 75-day pre-election deadline).

The Secretary certified the list of candidates for the 2026 General Election on September 4, 2026. Once the Secretary certified, counties[4] began administering the election in the precise ways that federal courts are advised not to disrupt. The

[4] A small number of counties were required to wait for the disposition of objection litigation appeals affecting their ballots. All of those cases were finally resolved by the Pennsylvania Supreme Court as of September 18, 2026.

processes already underway cannot be modified, and certainly not "without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (describing when requests to change election procedures close to an election should be denied). *See also People not Politicians v. Onder*, 609 U.S. ---, 2026 WL 2883222, *2 (Sept. 25, 2026) (per curiam) (holding that *Purcell* "applies with even greater force" where "the election . . . has already started," and noting that ballots had already been printed and mailed, and absentee voting and military and overseas voting had already begun), attached as Exhibit P. Two aspects of the ongoing administration are most significant here.

First, counties are already printing ballots and making them available to the 1,020,163 Pennsylvanians who already have been approved to vote by mail in the 2026 general election. *See* Marks Decl. ¶ 4. As of the time of this filing, counties have already sent out ballots to approximately 891,700 voters, Marks Decl. ¶ 6. Approximately 44,500 ballots have already been returned to county boards of elections. Marks Decl. ¶ 7. Many more counties will begin mailing ballots this week. And all counties must begin mailing ballots at least two weeks before Election Day on November 3, making this year's deadline October 20. 25 P.S. §§ 3146.5(b)(1), 3150.15. Even counties that may intend to wait until that statutory deadline to begin mailing ballots must start printing ballots well in advance—and most have already done so. Marks Decl. ¶ 6.

The Election Code itself treats the printing of ballots as the final point after which changes cannot be made. Candidates listed on the ballot cannot be substituted even in the event of death once "the printing of ballots is started." 25 P.S. § 2941(b). This statutory limitation demonstrates that the Pennsylvania General Assembly sees the printing of ballots as an end point. Otherwise, election officials would have to resolve, among other issues, whether voters sent one ballot need to be sent a new one, whether to cancel initial ballots, whether and how to count a ballot if the voter returns only one ballot, how to prevent double voting, and how to canvass and count different ballot types on machines that will have been calibrated and tested for a single ballot type. These concerns are particularly pronounced here given the hundreds of thousands of ballots already sent to voters.

Second, counties have begun the required testing—referred to as "logic and accuracy" testing—of their electronic voting systems to be used on election day. Under the Election Code, counties must provide notice of when and where this testing will take place at least 40 days before Election Day. This deadline was September 24 for the 2026 General Election. 25 P.S. § 3031.10(d). And, in fact, several counties have already completed their L&A testing, including Philadelphia, Allegheny, Montgomery, Erie, Lebanon and Chester counties. Marks Decl. ¶ 10. Several other counties intend to complete testing in the first two weeks of October. *Id.*

The Secretary, under his power to issue binding directives for "the operation of electronic voting systems," 25 P.S. § 3031.5(a), has provided instructions for this pre-election testing. Under the Secretary's Directive, the required testing involves "a series of pre-election steps intended to ensure that ballots, scanners, ballot-marking devices, and all components of a county's certified voting system are properly configured and in good working order prior to being used in an election." *See* Directive 1 of 2025 at 1, *Directive on Logic & Accuracy Testing*, Version 3.1 (Apr. 7, 2025).[5]

Logic and accuracy testing must be conducted using the actual ballots for an election and so cannot begin until those ballots have been finally defined. Directive 1 at 2-3. Testing is intensive: Every piece of voting equipment must be confirmed to be working properly even if it will only be stored as a backup. Directive 1 at 8-9. Testing can take more than a week, especially in larger counties with more equipment. Marks Decl. ¶¶ 9-10. Logic and accuracy testing must be completed fifteen days before Election Day, which is October 19 for the 2026 election. Directive 1 at 1.

---

[5] Available at: https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2025/2025-04-directive-on-logic-accuracy-testing-3.1.pdf

Because logic and accuracy testing is specific to the actual ballots to be used, changes to a ballot would require counties to recalibrate their voting systems and re-do logic and accuracy testing under timeframes that would not comply with the required notice provisions nor allow counties to meet the pre-election deadline.

**B. Even if he somehow was successful, Plaintiff could not be certified as a candidate until the brink of Election Day.**

The relief Plaintiff requests—and the only thing that the Secretary (who is the only defendant in this action) could be ordered to do—is to accept Plaintiff's nomination papers (which have never been submitted to the Department). That relief, however, would not put Plaintiff's name on the ballot—it simply would start a state process that *might* result in his placement on the ballot. Even if the Court orders the Secretary to accept Plaintiff's nomination papers, they must still be subject to an objections period before he could be certified as a candidate, as is applicable for any other Third Party Candidate. 25 P.S. § 2937. The Election Code gives parties seven days from when nomination papers are filed to raise objections in Commonwealth Court. *Id.* If the court determines that the nomination papers are defective or lack sufficient signatures, the nomination papers are set aside. *Id.* There is additionally a right of appellate review in the Pennsylvania Supreme Court. 42 Pa.C.S. § 723(a).

Commonwealth Court usually moves swiftly to resolve objections, but its review and the subsequent appeals take time. For the 2026 General Election, the last objection case was not resolved until September 18, 2026, 46 days after the

nomination filing deadline. *See In re Nomination Papers of Andrew Tupone*, ---A.3d---, No. 58 MAP 2026, 2026 WL 2794472 (Pa. Sept. 18, 2026), attached as Exhibit M. Even cutting that period in half and assuming Plaintiff is put on the ballot on October 1, objections would not be resolved until nine days before Election Day. By that point: (1) every county will have already been required to have completed their logic and accuracy testing; (2) every county will have already been required to have sent ballots to voters; (3) the majority of ballots will have already been delivered to voters; (4) election day ballots will be printed; and (5) hundreds of thousands of ballots will likely have been returned. In short, adding a new candidate to the ballot at such a stage is irreconcilable with the required timing of Pennsylvania's election preparations.[6]

## III. The Signature Requirements for Third Party Candidates Are Constitutional.

Finally, Plaintiff is not likely to succeed on his claims (and indeed has failed to allege any facts plausibly showing) that the signature requirement imposes an

[6] Plaintiff has made no allegations about any Lieutenant Governor candidate with whom he seeks to join on the ballot. As such, his claims are also doomed by the Pennsylvania Constitution. *See* Pa. Const. Art. IV, § 4 (requiring that "A Lieutenant Governor shall be chosen jointly with the Governor by the casting by each voter of a single vote applicable to both offices . . . .); *In re Nomination Papers of Tony Dastra and Craig Bolton*, No. 365 M.D. 2026, 2026 WL 2650980 (Pa. Cmwlth. Aug. 21, 2026) (holding that Governor and Lieutenant Governor candidates run in General Election as one, to be elected with one vote and that removal of one candidate precludes the other from continuing), attached as Exhibit N.

unconstitutional burden in violation of the First and Fourteenth Amendments. That the Election Code imposes different (and actually in many ways more stringent) requirements on major political party candidates does not render the current process unconstitutional.

To evaluate federal equal protection and associational challenges to ballot access regulations, courts "consider what burden is placed on the rights which plaintiffs seek to assert and then [] balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiff's rights be burdened." *Rogers v. Corbett*, 468 F.3d 188, 193-94 (3d Cir. 2006) (applying the *Anderson-Burdick* test to "both associational and equal protection" claims). Severe burdens must be justified by compelling state interests, while lesser burdens that impose "'only reasonable, nondiscriminatory restrictions' on constitutional rights" can be justified by a "State's important regulatory interests." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 145-46 (3d Cir. 2022).

Under federal law, "alternate ballot access rules for major and minor political parties are not *per se* unconstitutional." *See Rogers*, 468 F.3d at 196; *accord In re Zulick*, 832 A.2d 572, 581 (Pa. Cmwlth. 2003) ("[T]he [U.S.] Supreme Court has held that the different treatment of minor political parties from other political parties does not violate their equal protection."). There are "obvious differences in kind between the needs and potentials of a political party with historically established broad

support, on the one hand, and a new or small political organization on the other," that justify different paths to the ballot. *Jenness v. Fortson*, 403 U.S. 431, 441 (1971); *see also, e.g.*, *Am. Party of Texas v. White*, 415 U.S. 767, 781 (1974) (upholding law differentiating between major political parties and smaller political parties); *Indep. Party of Florida v. Secretary*, 967 F.3d 1277, 1284 (11th Cir. 2020) (upholding law that minor political organizations must submit signatures from at least one percent of all registered voters to gain ballot access).

Here, major party candidates must submit 2,000 signatures from members of their own party (at least 100 from at least 10 counties) to get on a *Primary Election* ballot, while Third Party Candidates must submit 5,000 signatures of any qualified elector regardless of political affiliation without any per county requirement, to get on a *General Election* ballot. While the number itself is higher, major party candidates must go through a Primary Election where only the winner of a plurality of votes for each respective party primary will be entitled to a place on the General Election ballot. 25 P.S. § 2862. Further, Third Party Candidates have a four and a half month time period to complete their nomination papers (compared to three weeks for major party candidates circulating nomination petitions) and can solicit signatures from any qualified elector regardless of political affiliation. 25 P.S. §§ 2911(c); 2913(b); Exhibit A, *Constitution Party of Pennsylvania* Order

(establishing signature requirements); Exhibit B, *Libertarian Party* Consent Decree (establishing filing deadline).

Plaintiff does not appear to contest the constitutional validity of differing requirements for Third Party Candidates, nor could he. *See Rogers*, 468 F.3d at 196. Instead, he claims that the combination of signature requirements, the county separation requirement, his claimed delay in accessing materials and the Department's refusal to provide him with an extension to the August 3 deadline (accorded to no other candidates) creates an impermissible burden. He is wrong. The burden is minimal and the requirements of which he complains serve important state interests.

As numerous courts have recognized, the Commonwealth has an important regulatory interest in avoiding ballot clutter and in ensuring only viable candidates with a modicum of support are placed on the ballot. *See Rogers,* 468 F.3d at 194-95, citing *Jenness*, 403 U.S. at 442. Further, the Commonwealth has a strong interest in "maintaining the integrity of the various routes to the ballot" and thereby the "stability of its political system." *De La Fuente v. Cortes*, 751 F. App'x 269, 273-74 (3d Cir. 2018) (quoting *Storer v. Brown*, 415 U.S. 724, 733, 736 (1974)) (upholding constitutionality of disaffiliation and "sore loser" rules), attached as Exhibit O. And signature requirements much more onerous than that of the current requirement established by the Constitution Party Order have not been deemed unreasonable. *See Storer*, 415 U.S. at 740 (noting that "gathering 325,000 signatures in 24 days would

not appear to be an impossible burden."); *Jenness*, 403 U.S. at 442 (upholding Georgia signature requirement of signatures of 5% of all registered voters); *Rogers*, 468 F.3d at 194-95 (holding Section 2911's 2% requirement facially valid).

Further, Plaintiff's claim that he was prevented from accessing nomination papers has no basis in fact. The Department posted the links for nomination papers for Third Party Candidates on March 10, 2026, a day before circulation is permitted. *See* Marks Decl. ¶ 12; *see also* Exhibits E, F. The Department does not post nomination paper links prior to that time because the Election Code does not permit earlier circulation. 25 P.S. § 2913. Doing so would only cause confusion between nomination petitions (for major party candidates) and Third Party Candidates' nomination papers. Marks Decl. ¶ 12. Plaintiff is not burdened by not being to obtain access to nomination papers prior to March 11 because he would not have been permitted to circulate before that date in any event.

Nor is Plaintiff burdened by having to organize nomination papers separately by county. The instructions are very clear on this requirement, and Plaintiff may print as many sheets as he would like from the Department's system. This statutory requirement to segregate by county is necessary for the Department's examination of nomination papers pursuant to Section 2936 of the Election Code. It is also necessary for objection proceedings which, as explained above, must take place in a very compressed timeline. Not having signers organized by county would make

review of the eligibility of those signers incredibly difficult for the Commonwealth Court. Marks Decl. ¶ 13.

Finally, Plaintiff cannot show that he is unduly burdened because the Department refused to provide an extension to the August 3 deadline. Plaintiff had over four months to circulate his nomination papers. This deadline is essential to allow for Pennsylvania courts to dispose of all objections to nominations and in order to ensure that the Secretary can certify candidates for the General Election so that counties can prepare, finalize, and send their ballots to voters. Moreover, granting Plaintiff an extension would result in the unequal treatment of all other Third Party Candidates and, therefore, create an equal protection violation.[7]

## CONCLUSION

For the reasons described above, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

[7] With added time, undoubtedly other would-be candidates also could have collected more signatures to achieve a place on the ballot. For example, the Green Party's candidate for Governor, Tony Dastra, who was subject to a challenge and forced off the ballot due to lack of valid signatures, may have had a different fate. *In re Nomination Papers of Tony Dastra and Craig Bolton*, 2026 WL 2650980.

September 29, 2026

Respectfully submitted,

/s/ *Kathleen A. Mullen*

Kathleen A. Mullen (Pa. 84604)
Executive Deputy Chief Counsel
Michelle Rupp (Pa. 337463)
Assistant Counsel
Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899
Email: kamullen@pa.gov
mirupp@pa.gov

*Counsel for Department of State and Secretary of the Commonwealth Al Schmidt*

## CERTIFICATE OF SERVICE

I, Kathleen A. Mullen, certify that I have caused Plaintiff to be served on this date with the foregoing via electronic mail to risingson8102@aol.com and via United States mail.

Date: September 29, 2026

/s/ *Kathleen A. Mullen*
Kathleen A. Mullen