UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS ATIYEH,<br><br>Plaintiff,<br><br>v.<br><br>AL SCHMIDT,<br><br>Defendant. | No. 1:26-cv-02813<br>Judge Keli M. Neary |

**SECRETARY OF THE COMMONWEALTH AL SCHMIDT'S OPPOSITION TO MOTION FOR RECONSIDERATION**

Plaintiff asks this Court to reconsider its denial of injunction relief that would have put him on the ballot for a statewide office at the eleventh-hour. His motion should be denied, both because he fails to provide "good cause" for why this Court should revisit its decision and because it is far too late for him to appear on the ballot.

## I. Election Day is in less than two weeks.

This Court denied Plaintiff's motion for preliminary injunction in part because "any order of injunctive relief in this matter would have come *later* than the relief the court struck down in Democratic National Committee for being too close to the election." Slip Op. 6-7. The injunction in that case was granted 44 days before the

2020 general election. As of the date of this filing, the 2026 general election is in 13 days.

This Court also denied Plaintiff's motion for preliminary injunction in part because "we are now less than thirty days from the election, and by virtue of mail-in voting, the election has already begun. Mere days before the preliminary injunction hearing in this matter, the Supreme Court emphasized in another decision that, where an election has already begun via mail-in voting, the 'Purcell principle' applies 'with even greater force.' People Not Politicians v. Onder, 609 U.S. ___ at 2 (2026)."

The information before the Court at that time was that as of September 29, 2026, 1,020,163 Pennsylvanians had been approved to vote by mail in the general election; counties had mailed ballots to approximately 891,700 voters; and 44,500 ballots had been returned. Sec'y Br. in Opp. to Mot. for Prelim. Inj. 13, Dkt. No. 13. Deputy Secretary Marks presented updated numbers at the preliminary injunction hearing on September 30, 2026. Now, as of the morning of October 21, 2026, more than 1.2 million Pennsylvanians have been approved to vote by mail in the general election, over 1.2 million ballots have been mailed, and more than 676,000 ballots have been returned. *See* Supplemental Declaration of Jonathan Marks, attached

hereto as Exhibit A. Every county has mailed ballots (and will continue to do so).[1] And counties have substantially completed their logic and accuracy testing. The election has not just begun, but is in full swing.

Moreover, as explained in the Secretary's brief in opposition to Plaintiff's motion for preliminary injunction, even if this Court were to order the Secretary to accept Plaintiff's nomination papers, it would simply start the 7-day period for parties to raise objections in Commonwealth Court. 25 P.S. § 2937. Assuming no objections, there would be only 6 days for every county to reprint and mail their ballots, and to re-test every single machine that will be used; for the postal service to deliver ballots to electors; for electors to complete and return their ballots; and for the postal service to deliver those ballots back to the counties.[2] If there are objections, that would further reduce or completely eliminate the time for everything that needs to be done. And of course, counties have limited staff, limited budgets, and a host of other things that need to be done in the two weeks before an election. In short, reconsideration at this stage would wreak havoc across the state.

## II. Plaintiff has not met the standard set for motions for reconsideration.

[1] A small number of ballots (less than 2,000) needed to be replaced and re-sent in Lehigh County due to a county error in connection with a ballot question.

[2] Although there are generally other return options available to voters, the type and availability of options varies greatly by county. In addition, absentee voters (as opposed to mail-in voters) are voters who definitionally cannot vote at the polling place on election day, and who may be unable to take advantage of other return options due to being homebound or out of town, lacking transportation, etc.

Motions for reconsideration of interlocutory orders are considered pursuant to Federal Rule of Civil Procedure 54(b). *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016). Unlike motions for reconsideration under Rules 59(e) and 60(b), which apply to final orders, courts may reconsider interlocutory orders "whenever 'consonant with justice to do so.'" *See id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire and Marine Ins. Co.*, 472 F. Supp. 2d 630 (M.D. Pa. 2007). However, "the movant must still establish good cause for why the court should revisit its prior decision." *Id.* (citing *Confer v. Custom Eng'g Co. Emp. Health Benefit Plan*, 760 F. Supp. 75, 77 (W.D. Pa. 1991)).

Furthermore, "a motion for reconsideration is 'not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.'" *Id.* (citing *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "A reconsideration motion should not be used to try to get a 'second bite at the apple,' or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question." *Id.* at 295-96 (internal citations omitted). Instead, a motion for reconsideration should "'address only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'" *Jacki Easlick, LLC v. CJ Emerald*, No. 2:23-cv-2000, 2024 WL 1657842, *4 (W.D. Pa. Apr. 17,

2024) (quoting *Gibbs-Squires v. Cosby*, No. 16-768, 2017 WL 5515952, *1 (E.D. Pa. Mar. 17, 2017). *See also id.* at *3 (declining to reconsider order on preliminary injunction where "[n]o intervening change in the controlling law has occurred, and there is no clear error of law or fact that the Court must correct").

**A. Plaintiff has not established "good cause" for reconsideration.**

Plaintiff's motion for reconsideration fails to establish good cause for this Court to revisit its prior decision. The motion raises irrelevant points and rehashes points this Court has already considered, rather than addressing matters the Court may have overlooked.

First, Plaintiff argues that he "never testified that he did not obtain 5,000 signatures." Mot. ¶ 2. In its recounting of the facts, this Court wrote that "[Plaintiff] was unable to recover from the error, and, on the day of the deadline, having not gathered the requisite 5000 signatures on the proper forms, called into the Department to request an extension." Slip Op. 3. Given that Plaintiff specifically challenged the "one county per page" rule, there is a material difference between this Court finding that he did not gather 5,000 signatures *at all*, and finding that he did not gather 5,000 signatures *on the proper forms*. However, even if this Court had found that Plaintiff did not obtain 5,000 signatures, the Court's reasoning does not rely on whether Plaintiff obtained 5,000 signatures. And even if the Court's

reasoning did rely on such a fact, Plaintiff does not claim in his motion and has provided no evidence that he did in fact obtain 5,000 signatures.

Second, Plaintiff's motion addresses when the nomination paperwork became available online. Mot. ¶¶ 3-9. Deputy Secretary Marks testified that the paperwork was posted on March 10, and documentary evidence was submitted, which this Court credited. *See* Slip Op. 2. Deputy Secretary Marks' testimony established that the revision date at the bottom of the nomination pages is updated for each election prior to posting on the website, but that otherwise there were no changes made to the pages. Based on this Court's comments at the hearing, the Court understood from Deputy Secretary Marks' testimony—and, indeed, explained to Plaintiff—that the bottoms of the signature pages had been accidentally cut off when printed because they were not printed on legal sized paper, and that there was no substantive difference between the Secretary's exhibit and Plaintiff's exhibit.

This Court also explained to Plaintiff that it would permit hearsay testimony—and, indeed, had already permitted hearsay testimony from Plaintiff—because the rules of evidence are not strictly enforced during a hearing for injunctive relief, and that the Court would subsequently give hearsay testimony whatever weight the Court determined it deserved. *See also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718-19 (3d Cir. 2004) (citing cases permitting hearsay evidence at the preliminary injunction stage, and recognizing that "[t]he weight to which such materials are

entitled may of course vary greatly depending on the facts and circumstances of a given case."). Accordingly, these are issues that the Court was well aware of and considered.

Third, Plaintiff's motion raises points related to the *Purcell* principle. Mot. ¶¶ 10-13. In its section on delay, this Court made two primary determinations based on Supreme Court precedent. First, "any order of injunctive relief in this matter would have come *later* than the relief the court struck down in Democratic National Committee for being too close to the election." Slip op. 6-7. Second, "by virtue of mail-in voting, the election has already begun," which (as stated in *People Not Politicians v. Onder*, 609 U.S. ___ at 2 (2026)) means that "the 'Purcell principle' applies 'with even greater force.'" Slip op. at 7. Nothing Plaintiff raises in his motion changes these facts or precedents.

Finally, Plaintiff's motion addresses his extension request. Mot. ¶¶ 14-15. Plaintiff admits he was informed by telephone that the Department would not grant him an extension. Compl. ¶ 24. He has pointed to no legal obligation for the Department to tell him the same by email and mail, as well, nor has he established any injury as a result of only being told by telephone. Plaintiff also admits that the telephone call occurred on August 3, i.e., the deadline for nomination paperwork to be filed; that he "subsequently" attempted to obtain written confirmation of the Department's position, including by US mail; and that the mail was returned. Compl.

¶¶ 22-28. Plaintiff's injury therefore has nothing to do with an incorrect mailing address and returned mail, because even with a correct mailing address his correspondence could not have reached the Department of State by 5:00 p.m. on August 3.

If Plaintiff's point in paragraphs 14 and 15 is instead that his delay in filing is excusable because he waited to file until he had written confirmation of the Department's position, that also does not establish good cause for reconsideration. Plaintiff contends that his correspondence was "returned approximately three weeks later." Mot. ¶ 15. This Court found that Plaintiff "waited nearly 50 days . . . before filing this lawsuit on September 21, 2026." Slip Op. 6. The returned correspondence accounts for less than half of that time, and in any event, Plaintiff was under no obligation to wait for a written confirmation of the Department's position before suing. He had already missed the filing deadline, and he had already been denied an extension by an employee of the office. Moreover, the amount of time he waited prior to filing does not change the fact that this lawsuit was filed "44 days before the November 3 election" and that "any order of injunctive relief in this matter would have come *later* than the relief the court struck down in Democratic National Committee for being too close to the election." Slip Op. 6-7.

**B. Plaintiff's motion does not relate to crucial aspects of this Court's decision.**

It is also important to recognize what Plaintiff's motion does not address. The motion does not address this Court's finding that "by virtue of mail-in voting, the election has already begun," and the Supreme Court's recent explanation that "'where an election has already begun via mail-in voting, the 'Purcell principle' applies 'with even greater force.'" Slip Op. 7 (citing *People Not Politicians v. Onder*, 609 U.S. ___ at 2 (2026)). Because the timing of the election is sufficient reason alone to refuse to issue a preliminary injunction, and because Plaintiff does not address this "very high bar for [him] to clear," Slip Op. 7, he has failed to establish good cause for this Court to revisit its decision.

Plaintiff's motion also does not address or affect this Court's determination that Plaintiff's "theory of constitutional violation is novel" and that he therefore has not shown "a high likelihood of success on [his] 'combination' theory." Slip Op. 8-9. Nor does it address or affect the Court's findings that he did not "present any argument as to why the 5000-signature requirement is, itself, violative of his constitutional rights," Slip Op. 10; that he "presented no legal argument on the [one-county-per-page rule's] unconstitutionality, Slip Op. 11; or that "he identifies no authority by which . . . an extension should have issued," Slip Op. 11. Because likelihood of success is a "gateway factor" that Plaintiff must satisfy in order to obtain a preliminary injunction, Slip Op. 4-5, this is also sufficient reason alone to deny his motion for reconsideration.

## III. Conclusion.

It is too late for Plaintiff to be put on the ballot, his motion does not provide "good cause" for reconsidering this Court's order, and even if this Court did reconsider based on his motion, critical portions of this Court's reasoning would remain undisturbed. Accordingly, Plaintiff's motion for reconsideration should be denied.

October 21, 2026

Respectfully submitted,

/s/ *Kathleen A. Mullen*

Kathleen A. Mullen (Pa. 84604)
Executive Deputy Chief Counsel
Michelle Rupp (Pa. 337463)
Assistant Counsel
Pennsylvania Department of State
306 North Office Building
Harrisburg, PA 17120
Tel: 717-783-0736
Fax: 717-214-9899
Email: kamullen@pa.gov
mirupp@pa.gov

*Counsel for Department of State and Secretary of the Commonwealth Al Schmidt*

**CERTIFICATE OF SERVICE**

I, Kathleen A. Mullen, certify that I have caused Plaintiff to be served on this date with the foregoing via electronic mail to risingson8102@aol.com and via United States mail.

Date: October 21, 2026

/s/ *Kathleen A. Mullen*
Kathleen A. Mullen